UNITED STATES of America, Appellee,

v.

Charles BURMAN, Appellant.

UNITED STATES of America, Appellee,

v.

Joseph Lewis WALKER, Appellant.

UNITED STATES of America, Appellee,

v.

Julia WALKER, Appellant.

Nos. 77–1792, 77–1794 and 77–1795.

United States Court of Appeals, Fourth Circuit.

Argued July 21, 1978.

Decided Oct. 13, 1978.

See also, D.C., 430 F.Supp. 609.

Joel Hirschhorn, Miami, Fla. (Hirschhorn & Freeman, Miami, Fla., on brief), for appellants in 77–1794 and 77–1795.

James J. Gitomer, Baltimore, Md., for appellant in 77–1792.

Donald H. Feige, Asst. U. S. Atty., Baltimore, Md. (Russell T. Baker, Jr., U. S. Atty. and Neal M. Janey, Asst. U. S. Atty., on brief), for appellee.

Before WINTER, Circuit Judge, FIELD, Senior Circuit Judge, and HALL, Circuit Judge.

K. K. HALL, Circuit Judge:

Joseph L. and Julia Walker, husband and wife, and Charles Robert Burman, Sr., appeal their convictions for conspiracy to violate narcotic laws under 21 U.S.C.A. § 846.

They raise numerous issues—only two of which we think require extensive comment. First, they allege a fatal variance between their indictment for participation in a single heroin distribution organization when, they contend, the government's proof showed separate conspiracies for various transactions in heroin which were related only by its common distribution through a single Los Angeles group which purchased the heroin, smuggled from Mexico, for sale to unrelated retailers in three east coast cities. Second, Burman appeals the district court's imposition of a special parole term for conviction of conspiracy under § 846 when such a term is not set forth in that section and can be permitted under it only by reference to the substantive offense statute, 21 U.S.C.A. § 841(b), which sets out such a term. Finding no error in their convictions or in the imposition of the special parole term, we affirm.

## I. FACTS

The government's evidence showed that over a three-year period from 1973 to 1976, substantial dealings in pure heroin were conducted on a regular basis by indicted defendants and others. After the heroin was smuggled from Mexico, it was purchased by Edward James Robinson and Felix Mike who in turn distributed it in pound lots to retailers in Baltimore, Maryland; Miami, Florida; and Philadelphia, Pennsylvania. The retailers "cut" the heroin by diluting its quality and breaking it up into smaller lots for resale. The Walkers were retailers in Miami and Burman was a Baltimore dealer who over the span of a year repeatedly purchased two-pound lots from two Baltimore retailers for $27,000 in cash and who eventually became a retailer himself, venturing his money with a retailer for a purchase from Robinson and Mike and on one occasion traveling with a retailer to Los Angeles to purchase heroin from Mike. The Walkers and Burman did not know each other nor did the government show that they had any specific knowledge of the existence of heroin dealings in any city other than their own. During their participation in the conspiracy, the Walkers made purchases totalling more than one million dollars and Burman made payments totalling more than $180,000 in cash—$162,000 to retailers and $18,000 as a retailer himself.

The twelve indicted defendants were scheduled to be tried together in Baltimore. All but the Walkers and Burman pleaded guilty to various charges. Most of the pleading defendants, including Robinson and Mike, testified against the Walkers and Burman. The jury found the Walkers guilty of conspiracy but failed to reach a verdict as to Burman. A mistrial was declared in Burman's case and he was retried a month later. At the conclusion of the second trial, after two hours of deliberation, the jury found Burman guilty of conspiracy.

## II. SINGLE CONSPIRACY

Most points of error raised by the defendants relate to whether the government's case proved that they participated in a single organizational conspiracy, as charged in the indictment, with various transactions by different people representing steps in a distribution scheme, or rather that they participated in separate conspiracies for dealings in heroin which were related only by the fact of the common distribution from Los Angeles by Robinson and Mike—about which dealings, other than their own, neither the Walkers nor Burman had any specific knowledge. They contend that if only unrelated conspiracies for each transaction were proved then a fatal variance existed between the indictment and the proof presented against them, in that, it allowed prejudicial evidence associating them with bad persons and bad acts to be improperly admitted against them solely by virtue of an overbroad indictment for organizational conspiracy. The Walkers also contend that the variance was fatal because it supported prejudicial misjoinder of their trials with Burman's trial.

■ We think the government's evidence shows that a single organizational conspiracy has been proved. First, the fact that the defendants claim ignorance of the details of the steps required to have the heroin delivered to them is of no consequence because from the nature of the contraband and the vastness and regularity of their own dealings; each reasonably knew that smuggling and various other illegal transactions were required to make their own dealing possible. Second, it has been consistently held by other jurisdictions that proof of large scale distribution of smuggled narcotic contraband gives rise to an inference of participation in a single organization conspiracy by persons who perform similar large-scale distribution functions in separate localities without specific knowledge of the existence or numbers of such other persons and localities. *United States v. Moten*, 564 F.2d 620, 624–26 (2nd Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 489, 531, 54 L.Ed.2d 318 (1977); *United States v. Perry*, 550 F.2d 524, 531 (9th Cir.), *cert. denied*, 434 U.S. 827, 98 S.Ct. 104, 54 L.Ed.2d 85 (1977).

In Burman's case, although the time of his dealings was shorter and the quantities were smaller than those of the Walkers, who dealt personally with the central suppliers in Los Angeles, we think the amount and regularity of his supply from Baltimore retailers gives rise to the same inference of single conspiracy as arises against the Walkers. In cases of conspiracy to distribute a smuggled narcotic contraband, the focus of the inquiry on the issue of knowledge and intent is the regularity and volume of dealings and not merely the horizontal similarity of functions on a distribution network which may have separate outlets. And we think that the inference that Burman had joined in a large scale narcotics distribution organization clearly is supported by evidence that he traveled to Los Angeles with a retailer to make a purchase directly from the central supplier and that at one time he ventured some of his own money with a retailer for a direct purchase of heroin from the central supplier. Thus, the fact that Burman was one step removed from the hub of the conspiracy for most but not all of his heroin dealing—which were large volume and were made regularly for a period in excess of one year—does not limit the government's case to proof of multiple unrelated conspiracies.

Therefore, we do not need to consider the three defendant's claims of prejudice regarding variance between the indictment and the government's case, nor do we need to consider the Walkers' objection to prejudicial joinder of their trials with Burman's trial.[1]

### III. SPECIAL PAROLE TERM

Burman objects to the imposition of a special parole term of fifteen years as part of his sentence for conspiracy to distribute heroin under 21 U.S.C.A. § 846. That statute reads simply,

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the [substantive] offense.

21 U.S.C.A. § 846. The substantive offense statute is 21 U.S.C.A. § 841(b), which reads, in pertinent part,

[Offenders] shall be sentenced to a term of imprisonment of not more than 15 years, a fine of not more than $25,000, or both. . . . Any sentence imposing a term of imprisonment . . . shall . . . impose a special parole term of at least 3 years in addition to such term of imprisonment . . . .

21 U.S.C.A. § 841(b).

Burman contends that, as a criminal statute, § 846 should be strictly construed to permit only sentences of imprisonment or fine, or both, and that it should not be construed to allow the imposition of an additional penalty not clearly specified by its terms. In support of his position he relies upon *Fassette v. United States*, 444 F.Supp. 1245 (C.D.Cal.1978).

The government contends that such a narrow construction of § 846 would be overly technical in that § 846 sets no penalties by its own terms and instead clearly contemplates that punishment for conspiracy be set by reference to the substantive offense statute, which in this case is § 841(b) and which automatically imposes a mandatory minimum special parole term of at least three years anytime imprisonment is made part of the sentence. Furthermore, the government contends that to eliminate special parole terms as a penalty for conspiracy to distribute heroin would frustrate the intended statutory scheme to prevent renewed narcotics dealings by past drug offenders following their release from prison and good behavior parole. Also, this would produce the absurd result of subjecting large scale heroin distributors to less punishment than the small scale offender who may be convicted of a single narcotics transaction when the terms of the statute require all conspiracies to be punished by

---

1. However, we note that the district court sought to carefully eliminate any prejudice which might result from proof of unrelated conspiracies. *United States v. Walker*, 430 F.Supp. 609 (1977).

direct reference to the substantive offense statute.

In support of its position, the government cites *United States v. Dankert*, 507 F.2d 190 (5th Cir. 1975) in which analogous drug control statutes, which are stated in terms similar to §§ 846 and 841(b), were construed to permit the imposition of a special parole term for conspiracy when the conspiracy was punishable by "imprisonment or fine or both," with reference to the penalties provided for in the substantive offense statute, 21 U.S.C.A. § 963. Also, the government cites various cases where special parole terms were imposed for violations of § 846 but apparently were not objected to or specifically ruled upon by courts considering other issues on appeal. *United States v. Wiley*, 519 F.2d 1348, 1351 (2nd Cir. 1975); *United States v. De La Fuente*, 550 F.2d 309 (5th Cir. 1977).

We think that a special parole term for violation of § 846 was properly included in Burman's sentence. The conspiracy statute, § 846, is punishable by a sentence which must be set by reference to the penalties of the substantive offense statute. A special parole term is automatically made part of the sentence prescribed by the substantive offense statute, § 841(b), anytime imprisonment is included in the sentence. We think that under this statutory scheme such a special parole term is required as a penalty under § 846 when a sentence of imprisonment is imposed because the substantive offensive statute, § 841(b), would so require it and the terms "imprisonment or fine or both" only have meaning by reference to the sentences imposed under substantive offense statutes. Because we do not find Burman's special parole term of fifteen years to be excessive, we hold that the imposition of a special parole term of fifteen years by the district court for violation of § 846 was proper.

We have reviewed all other issues raised in this appeal, and find no error requiring reversal. Accordingly, the convictions are affirmed.

AFFIRMED.